El Pueblo de Puerto Rico, peticionario, *v.* Tribunal de Distrito de San Juan, Hon. Luis R. Polo, Juez, demandado; Aleja Romero Vda. de Ortiz, interventora.

Núm. 1777.—*Sometido:* Diciembre 1, 1948. *Resuelto:* Diciembre 3, 1948.

414

Hon. Procurador General Luis Negrón Fernández y J. Rivera Barreras, Fiscal del Tribunal Supremo, abogados del peticionario; M. López Carrillo y B. Sánchez Castaño, abogados de la interventora.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El fiscal radicó acusación contra Aleja Romero vda. de Ortiz imputándole poseer y tener en su casa varios artículos que se pueden usar para el juego de la bolita, en violación de la Ley núm. 220, Leyes de Puerto Rico, 1948 (pág. 739). Estos artículos fueron ocupados cuando la casa de la acusada fué registrada mediante orden de allanamiento. La acusada radicó una moción solicitando la nulidad de dicha orden de allanamiento y la devolución de la evidencia ocupádale. La corte de distrito la declaró con lugar. A petición del fiscal de este Tribunal expedimos el auto de *certiorari* para revisar dicha resolución.

La corte de distrito resolvió que la declaración jurada en que se basaba la orden de allanamiento era insuficiente por el hecho de que sólo contenía las conclusiones del declarante y no exponía hechos según lo exige el artículo 505 del Código de Enjuiciamiento Criminal.

La declaración jurada lee en parte como sigue:

"Que le consta de propio conocimiento que Aleja Romero vda. de Ortiz, que reside en el Km. 4, Hm. 2, Carr. Bo. Isla Verde de Carolina, P. R., en una casa construída de mampostería, madera y zinc, pintada de color amarillo y blanco, tiene balcón en forma de marquesina al frente y una puerta al frente de madera y cristal, a la parte atrás tiene otra casita de madera, que utiliza el servicio, las dos casas colindan por el Sur con la carretera, al Norte, con la playa y Este y Oeste dos verjas de concreto.

"Que el declarante sabe de propio conocimiento y por investigaciones practicadas y por observación personal que Aleja Romero vda. de Ortiz, es dueño, [sic] administrador, director, de una banca de loterías clandestinas generalmente conocida por Bolita y *Boli-Pool,* la cual explota en esta ciudad y barrios limítrofes, que imprime y hace imprimir billetes y boletos de las mencionadas bancas de lotería clandestinas para distribuirlos personalmente y por medio de sus agentes y empleados al público mediante paga, a sabiendas de que los mencionados tickets y boletos forman parte de loterías clandestinas y representan acciones o interés en las mismas, por las cuales, en caso de resultar premiados uno o más números, paga los dividendos o beneficios en dinero previamente estipulados, entre él y su clientela, y para realizar este negocio, tiene en su casa ya descrita, y en la misma casa manipula, distribuye, vende, coteja y expende los ya descritos boletos o tickets, y para poner en ejecución este negocio ilegal tiene y utiliza en su casa ya descrita los siguientes objetos: listas de papel numeradas con números del juego ilegal de la Bolita, tickets y boletos de Boli-Pool, lápices, dinero, listas de cuentas relacionados con el juego ilegal de la Bolita.

"Que el juego de Bolita lo sortea regularmente todos los días y también los días en que se sortea la Lotería Oficial de Puerto Rico y la Lotería Nacional de Santo Domingo, R. D., y esto lo realiza el querellante [sic] a sabiendas y voluntariamente y con la intención expresa de violar las disposiciones de la Ley No. 220 de mayo 15, 1948, que declara estorbo público los mencionados juegos de loterías clandestinas.

"Que el declarante ha visto estas operaciones ilegales realizadas por Aleja Romero vda. de Ortiz, en varias ocasiones y la última vez el día 8–1–48, cuando varios agentes del querellado le entregaban cuentas, dinero y papeles, boletos y tickets representando acciones e interés en el referido juego de loterías clandestinas a la mencionada Aleja Romero vda. de Ortiz."

No nos detenemos a determinar si es propio incluir información obtenida por "investigación" en una declaración jurada de esta naturaleza. *Cf. Grau* v. *United States,* 287 U.S. 124; *Byars* v. *United States,* 273 U.S. 28; *Annotation,* 74 A.L.R. 1418, 1490–98; Fraenkel, *Concerning Searches and Seizures,* 34 *Harv.L.Rev.* 361, 381–82; *Pueblo* v. *Capriles,* 58 D.P.R. 548, 558. Aparte de esa cuestión, la manifestación contenida en el segundo párrafo de la declaración jurada, al efecto de que al declarante le consta de propio conocimiento y por observación personal que la acusada es dueña, administradora y directora de una banca de *boli-pool,* es una mera conclusión. El declarante no expuso, según lo exige el artículo 505, hechos algunos en qué basar su conclusión. Por tanto, la declaración era defectuosa en tanto en cuanto fué presentada para demostrar que la acusada era la dueña, administradora y directora de una banca de boli-pool.

El segundo párrafo también dice que la acusada imprimía billetes y tenía en su casa listas, billetes y boletos que se usan en el juego de la bolita. Si el declarante vió (*a*) imprimiendo billetes en la casa de la acusada y (*b*) las listas, etc., siendo usados en la casa para el juego de la bolita, estos hechos serían suficientes para justificar la expedición de la orden de allanamiento. Sin embargo, el segundo párrafo no es lo claro que podría ser sobre este punto y el caso puede resolverse sin recurrir a este segundo párrafo. Por consiguiente, suponemos, sin decidirlo, que (*a*) y (*b*) no le constaban al declarante por observación personal y que estos hechos no pueden utilizarse para justificar la expedición de la orden de allanamiento.

█ Sin embargo, los párrafos 1, 3 y 4, cuando se leen conjuntamente, dicen que el declarante vió a la acusada en la casa descrita recibiendo cuentas, dinero, papeles, boletos y tickets representando acciones e intereses en el juego de *boli-pool.* En *Pueblo* v. *Aybar,* 68 D.P.R. 6, decidimos que

una manifestación sustancialmente similar a ésta en una declaración jurada justificaba la expedición de una orden de allanamiento. Llegamos a la misma conclusión en el caso de autos. Véanse también, *Steele v. United States No. 1,* 267 U.S. 498; *United States v. Esposito,* 45 F. Supp. 39 (Dist. Ct., Pa., 1942); *Jackson v. Commonwealth,* 282 S.W. 1058 (Ky., 1926); *Annotation,* 74 A.L.R. 1418, 1479 *et seq.*([1])

Las otras contenciones de la acusada atacando la orden de allanamiento son frívolas y es innecesario considerarlas en detalle.

*La resolución de la corte de distrito será anulada y el caso devuelto para ulteriores procedimientos.*

---

([1])En el caso de *Aybar,* luego de resumir el contenido de la declaración jurada a la pág. 9, dijimos que la misma era suficiente por cuanto se basaba "en evidencia directa que le constaba [al declarante] de propio conocimiento". Para evitar cualquier mala interpretación del caso de *Aybar,* señalamos que la primera parte de la declaración jurada en ese caso era defectuosa, igual que el segundo párrafo de la declaración jurada en el presente caso, por contener conclusiones que no estaban sostenidas por hechos. Sin embargo, en dicho caso basamos nuestra decisión en la descripción de la casa vista por el declarante y en la última cláusula de su declaración jurada, en la que exponía lo que había visto ocurrir en la casa. A ese respecto, el caso de *Aybar* y el presente son sustancialmente similares.